UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY DAWN TAYLOR, | 4:25-CV-04165-ECS |
| Plaintiff, | |
| vs. | ORDER GRANTING MOTION TO DISMISS |
| WASTE CONNECTIONS OF SD, INC., d/b/a Novak Sanitary Services, | |
| Defendant. | |

Plaintiff Kimberly Dawn Taylor, acting pro se, alleges violations of Title VII of the Civil Rights Act of 1964 against her former employer, Waste Connections of SD, Inc. d/b/a Novak Sanitary Services (Novak). Doc. 1. Pending before the Court is Novak's Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies or otherwise state a claim. Docs. 10, 11. For the reasons stated below, the motion is granted.

## I.    Facts as Alleged by Plaintiff

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), courts "accept[ ] as true all factual allegations in the light most favorable to the nonmoving party." Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019) (citing Smithrud v. City of St. Paul, 746 F.3d 391, 397 (8th Cir. 2014)). Accordingly, to comply with this standard of review, the following recitation of facts is nearly verbatim as to

what is stated in Plaintiff's Complaint. Quotation marks are omitted when quoting facts from the Complaint.

Plaintiff Kimberly Dawn Taylor was employed by Waste Connections of SD, Inc., DBA Novak Sanitary Services, in Sioux Falls, South Dakota, from March 13, 2020, until she was terminated on May 1, 2025. Doc. 1 at 3. Plaintiff consistently performed her job well and received recognition as Employee of the Year. Id.

In October 2024, Plaintiff raised concerns about an inappropriate banner with the F word and middle fingers up, that the district manager, Greg Fendelman, allowed in the breakroom. Id. Plaintiff objected to the banner, claiming she was convicted at church regarding it, and that the banner violated her beliefs. Id. She also reported a safety concern at the same time. Id.

In January 2025, Plaintiff again raised the same safety concern. Id. Fendelman agreed but did not correct the issue. Id. The following day, Plaintiff's manager, Roy Card, informed Plaintiff that Fendelman took away half her boot allowance. Id. Plaintiff complained saying that was retaliation and Card spoke to Fendelman. Id. Fendelman refused to give back half of her boot allowance. Id.

The safety concern was not addressed by anyone, and one of Plaintiff's co-workers, Monica Mickelson, slipped in the grease. Id. at 3–4. It was again reported to the manager and district manager and ignored and not cleaned up. Id. at 4. Plaintiff took pictures almost daily to document the safety concern. Id.

Plaintiff witnessed and reported multiple employees and a supervisor vaping in the breakroom, shop, and office prior to and during April 2025. Id. She confronted the co-worker, Scott Lundeen, and the supervisor standing there, Brian Lensegrav, looked the other way. Id. Lundeen said the district manager okayed vaping in the building. Id. So, she brought it to the

2

district manager's attention. Id. The district manager took away her driving job and her safety-sensitive position, which came with up to $3,250 in bonuses per year and contests/prizes. Id. Her job duties got taken over by her manager and supervisor. Id. Plaintiff was banned from the shop, container shop, and yard, and therefore was unable to do certain job duties she had been doing for five years. Id. Plaintiff complained that this was retaliation, and the district manager ignored her. Id.

Plaintiff then contacted Mike Kranz, a higher-up in the company, but at a different site. Id. Kranz contacted HR, who then contacted Plaintiff, since there was no HR on site. Id. HR said they cannot treat Plaintiff like that and would speak to the district manager and manager concerning it. Id. Starting then, and continuing for two weeks, her manager, supervisor, and all shop co-workers, (except five), stopped talking to, looking at, or engaging in any business/interaction with Plaintiff. Id. at 4–5. Plaintiff cried daily in her office and was anxious and depressed. Id. at 5. She had other symptoms, went to the doctor for them, and saw a counselor. Id.

During a shop meeting, Plaintiff asked her co-workers why they stopped talking to her. Id. Nobody responded, and they all looked at the ground. Id. Plaintiff apologized for snitching on them for vaping, and she started crying. Id. Alex Gray, a mechanic sitting next to her, reported that they were instructed by their manager, Card, not to speak to Plaintiff. Id. Another co-worker, Lundeen, informed Plaintiff he was told he could not enter Plaintiff's office without a supervisor present. Id.

Plaintiff brought all these things again to the district manager and HR. Id. HR spent an hour with Plaintiff and said she would investigate and get back to her. Id. Plaintiff cried to both HR and the district manager, reporting feeling retaliated against, isolated, and emotionally

3

distressed. Id. The district manager said he would ask Gray but claimed it was probably just a misunderstanding. Id.

The following day, May 1, Plaintiff was called into the manager's office by the district manager. Id. The district manager said he spoke to Gray and said he had misunderstood Card and that they were not told to ignore Plaintiff. Id. Plaintiff said to the district manager, "I don't believe you," and said to her manager, "You're a man of GOD, Roy, tell the truth." Id. at 5–6. The district manager told Plaintiff to stop. Id. at 6. Plaintiff responded, saying she was going to file a complaint with the EEOC because this was retaliation and harassment. Id. The district manager told her to go home and told her manager to pay her for the day. Id. Plaintiff left and spoke to Mike Kranz, who said he would have HR call her. Id. HR did not call her, and the district manager called Plaintiff at the end of the day. Id. Plaintiff was fired by the district manager, with the reasoning that she was disrespectful in the meeting and even brought religion into it. Id.

## II.    Procedural Posture

Plaintiff alleges she filed a dispute with the EEOC after being sent home and before getting fired. Id. She claims she received a right to sue letter on May 30, 2025, and timely filed this action within 90 days of the notice. Id.; see Doc. 1-1.

> Plaintiff believes the discrimination, retaliation and hostile work [environment] were brought on after she started putting pictures of Jesus and bible verses on the wall in her office, wearing biblical clothing and listening to Christian music in her office, and after reporting safety and integrity concerns after being convicted by the Holy Spirit at church. The #1 & #2 core values [of Defendant] are Safety and Integrity, and [its] mission statement says, "We ask that you hold us accountable[."] [Plaintiff] did and was punished for it, over and over again.

Doc. 1 at 6.

4

Plaintiff alleges religious discrimination, retaliation, hostile work environment, and wrongful termination under Title VII of the Civil Right Act of 1964. Id. at 1, 7. She seeks compensatory and punitive damages. Id. at 3.

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff did not administratively exhaust these claims, or in the alternative, because Taylor "has failed to plead adequate facts to raise any claim to the level of plausibility." Doc. 11 at 2, 12; Doc. 10 at 1.

## III.    Discussion

### A.    Failure to Exhaust

Novak first argues that "Plaintiff failed to administratively exhaust her remedies for her hostile work environment, retaliation, and wrongful termination claims." Doc. 10 at 1. In its brief in support, Novak argues "[t]he Court should dismiss Plaintiff's Complaint in its entirety and with prejudice because she failed to exhaust her administrative remedies as to each claim." Doc. 11 at 8. The Court therefore construes the argument as also encompassing Taylor's religious discrimination claim. Taylor responds, "[a]ll of the claims in the suit fall within the scope of her EEOC charge, or are similar to or reasonably related to the allegations brought forth in that charge." Doc. 13 at 4.

Taylor's charge indicates discrimination based on "religion, retaliation." Doc. 12-1 at 2. See also Faibisch v. Univ. of Minn., 304 F.3d 797, 802–03 (8th Cir. 2002) (courts may consider charge at motion to dismiss stage), overruled in part on other grounds by Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). For the particulars, Taylor states in her charge:

> I.    I was an employee of the above-named respondent. I made several complaints about discrimination based on my religious convictions during the relevant period. The respondent did not address my complaints and I was discharged on May 1, 2025.

II.     It is my belief I was discriminated against based on my religion, Christian and/or in retaliation for participating in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

Doc. 12-1 at 2.

Taylor indicated the date discrimination took place as May 1, 2025, for both earliest and latest. Id.

Title VII of the Civil Rights Act of 1964 (the "Act") guarantees equal employment opportunities regardless of a person's membership in a protected class, such as religion.  Pub. L. No. 88-352, § 703, 78 Stat. 241, 253, 255 (codified at 42 U.S.C. § 2000e-2).  The Act creates the Equal Employment Opportunity Commission (EEOC), which it empowers to prevent the unlawful employment practices proscribed within the Act.  42 U.S.C. §§ 2000e-4(a), 2000e-5(a). As Novak notes, before a plaintiff may bring a civil suit under Title VII, she must first exhaust her administrative remedies, in other words "(1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." Doc. 11 at 5 (citing Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850 (8th Cir. 2012) (per curiam) and quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)); see 42 U.S.C. § 2000e-5(b)–(c); see also N.Y. Gaslight Club, Inc. v. Carey, 447 U.S. 54, 63–65 (1980).  "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice, with its own exhaustion requirement." Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894, 898 (8th Cir. 2024) (citation modified).  If the EEOC decides it will not act on the charge, it notifies the person aggrieved of their right to sue.  § 2000e-5(f)(1).  "Once an individual receives notice of the right to sue, she has 90 days in which to file suit." Williams, 21 F.3d at 222 (citing § 2000e-5(f)(1)).

The scope of a Title VII complaint "is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge." EEOC v. Delight Wholesale Co., 973 F.2d 664, 668 (8th Cir. 1992) (citations omitted); Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir. 1988) (citations omitted). Courts "will liberally construe an administrative charge for exhaustion of remedies purposes," but "there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015) (citation modified).

No one here disputes that Taylor timely filed a charge of discrimination with the EEOC,[1] received notice of her right to sue, or filed suit within 90 days. See generally Docs. 11, 13. Rather, Novak argues that Taylor's charge omits any reference to a hostile work environment or wrongful termination. Doc. 11 at 6. Novak further argues that Taylor's charge, while mentioning the word "retaliation," fails to "provide a single fact pointing to what retaliation she alleges occurred, by whom, or why." Id. at 7 (citation omitted). Lastly, Novak considers any event occurring on a day other than May 1, 2025, unexhausted, because Taylor "told the EEOC in her charge that the alleged discrimination began and ended on one day—on May 1, 2025." Id. at 8. At bottom, Novak argues that Taylor cannot have exhausted her claims because exhaustion is as to the claim and its supporting facts, and Taylor's charge either explicitly lacks the claims she brings in this suit or omits the facts to support those claims. Id. at 5–8. The Court agrees.

---

[1] The Court will not entertain Novak's argument, raised for the first time in its reply brief, that claims related "to a banner with the 'F word' on it'" are barred by the statute of limitations. Doc. 14 at 6 n.3; see Rockboy v. Charles Mix County, No. 4:24-CV-04093-ECS, 2026 WL 323333, at *13 (D.S.D. Feb. 6, 2026) (citing Barham v. Reliance Standard Life Ins. Co., 441 F.3d 581, 584 (8th Cir. 2006)), appeal on other grounds docketed, No. 26-1491 (8th Cir. Mar. 19, 2026).

### 1.    Religious Discrimination / Wrongful Termination / Hostile Work Environment

As to religious discrimination, "[a]lthough [a charge] need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 697 (8th Cir. 2009) (quoting Fair v. Norris, 480 F.3d 865, 866 n.2 (8th Cir. 2007)). Whatever Taylor's religious discrimination complaints are, she provides no facts in the charge to either allow the EEOC to investigate the veracity of such complaints or give Novak notice of them. Taylor merely alleges that she complained about discrimination and believed she was discriminated against. Doc. 12-1 at 2. Each discrete act of discrimination must be exhausted individually. Ringhofer, 102 F.4th at 898. Where Taylor has alleged no discrete act of discrimination in her charge, no exhaustion is possible. This logic necessarily renders unexhausted Taylor's wrongful termination and hostile work environment claims, as they must be predicated on religious discrimination.

### 2.    Retaliation

As to Taylor's retaliation claim, her charge merely states that she believes she was "discriminated against based on [her] religion, Christian and/or in retaliation for participating in protected activity." Doc. 12-1 at 2. The retaliation claim cannot have allowed the EEOC to investigate its veracity or put Novak on notice of its substance because Taylor fails to explain the protected activity for which she was retaliated against.[2] To the extent the allegation acts in

---

[2] "As part of the Commission's investigation, the Commission may require the person claiming to be aggrieved to provide" additional facts. 29 C.F.R. § 1601.15(b). By way of these additional facts, the "charge on its face" becomes "amplified by the statements of the person claiming to be aggrieved." § 1601.18(a). Taylor attaches to her response brief an email where, as part of the Commission's investigation, Taylor was asked to provide the protected class associated with her retaliation claim. Doc. 13-1 at 19–20. In response, Taylor offered not only that class but a bevy of unrequested facts. Id. at 21–22. This attachment is one of several Novak asks the Court to strike pursuant to Federal Rule of Civil Procedure 12(d), a rule that would convert the instant motion to one for summary judgment if the Court considered matters outside the pleadings. See Doc. 14 at 1–2; Fed. R. Civ. P. 12(d). Whether this Court

8

coordination with Paragraph I in the charge alleging Novak discharged her after ignoring her complaints about discrimination, the retaliation claim is merely redundant of her unexhausted wrongful termination claim.

## B.    Failure to State a Claim

Even assuming exhaustion, Novak argues that Taylor's Complaint should also be dismissed for failure to state a claim. Doc. 11 at 8–12. Taylor argues that she has plausibly stated each of her claims.[3]  Doc. 13 at 4–6.

Federal Rule of Civil Procedure 12(b)(6) permits a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." "Although a complaint need not contain detailed factual allegations to survive a motion to dismiss under Rule 12(b)(6), it must contain 'enough facts to state a claim to relief that is plausible on its face.'" Ranchers-Cattlemen Action Legal Fund United Stockgrowers of Am. v. USDA, No. 5:24-CV-05085-ECS, 2025 WL 2783499, at *8 (D.S.D. Sept. 30, 2025) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

---

excludes the email or considers it as part of the public record, see, e.g., Spencer v. Lawson Screen Prods., No. 4:05cv1280 TCM, 2006 U.S. Dist. LEXIS 6723, at *2–3 (E.D. Mo. Feb. 22, 2006), the effect is the same. Nowhere in this statement of facts does Taylor allege any acts of discrimination nor a protected activity that she engaged in. It evinces only Taylor's religious nature. Doc. 13-1 at 21–22. A protected activity for which one can be retaliated against in the Title VII context is either opposing a discriminatory practice prohibited by Title VII or making a charge or participating "in an investigation, proceeding, or hearing" under the same. 42 U.S.C. § 2000e-3(a). Taylor does not allege she suffered an adverse consequence for either, only that she was sent home and discharged despite (1) being religious; (2) using the word "GOD" in a sentence; and (3) using the words "EEOC" and "retaliation" in a sentence. Taylor alleges her opposition to certain matters, but not to practices made unlawful by Title VII. Taylor does not specify any act in her charge, even as amplified, which constitutes discrimination based on her religion, or a violation of any person's rights under Title VII. A fortiori, the charge, whether on its face, or as "amplified" by Taylor's email, does not provide information necessary for the EEOC to investigate a retaliation claim or for Novak to be put on notice of one's substance.

[3] The headings in Taylor's response are "Plaintiff Has Stated A Plausible Claim Of Religious Discrimination . . . Plaintiff Has Stated A Plausible Claim of Retaliation . . . [and] Plaintiff Has Stated A Plausible Claim Of A Hostile Work Environment." Doc. 13 at 4–5. Apparently guided by the absence of a heading related to wrongful termination, Novak argues "Plaintiff has also failed to respond to the Company's argument that she failed to state a claim for Wrongful Discharge, warranting dismissal of that claim." Doc. 14 at 6 n.4; see also id. at 1. But Taylor folds the termination argument under her religious discrimination heading. Doc. 13 at 4. At any rate, the Court must consider the merits of Novak's argument, not disregard the claim for reason of waiver. Richmond v. Wiese, No. 4:25-CV-04217-ECS, 2026 WL 1803822, at *2 (D.S.D. June 23, 2026) (citing Country Club Ests., L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1006 (8th Cir. 2000)).

9

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

On a motion to dismiss under Rule 12(b)(6), "[c]ourts must accept a plaintiff's factual allegations as true" and construe all reasonable inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012) (citing Ashcroft, 556 U.S. at 678; E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 662 (8th Cir. 2012)). When ruling on a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

### 1.    Religious Discrimination

Taylor argues that her religious discrimination claim should survive because she "alleges to be a person of faith and claims the Defendant took negative actions against her because of her religious beliefs and practices." Doc. 13 at 4. But that is not the test.

> To establish a prima facie case of religious discrimination under Title VII, [employees] must show [1] that they have a bona fide religious belief that conflicts with an employment requirement; [2] that they informed [employer] of this belief;

10

and [3] that they were disciplined for failing to comply with the conflicting requirement of employment.

Ringhofer, 102 F.4th at 900 (alterations in original) (quoting Jones v. TEK Indus., Inc., 319 F.3d 355, 359 (8th Cir. 2003)).  "At the pleadings stage, [Taylor is] not required to establish a prima facie case, but [she] must plead sufficient factual allegations to plausibly support each of these three elements."  Colson v. Hennepin County, 169 F.4th 773, 777 (8th Cir. 2026), petition for cert. filed (U.S. June 9, 2026) (No. 25-1378).

Taylor's Complaint does not plausibly support any of these elements.  Taylor does not identify any requirement of her employment at Novak that conflicted with her religious beliefs, or that she informed her employer of any job requirements that conflicted with her religion.  In fact, Taylor does not discuss her job requirements at all.  Plaintiff alleges complaining to her managers about "an inappropriate banner with the F word and middle fingers up," an apparent grease spot on a floor, co-workers "vaping in the breakroom," and the fact that all but five of her co-workers stopped talking to her.  Doc. 1 at 3–5.  Although Taylor pleads losing her boot allowance, certain job duties, and ultimately her job, id., she never alleges these events occurred because she failed to comply with a job requirement that conflicted with her religion.  Taylor fails to state a claim for religious discrimination.

### 2.    Wrongful Termination

"Title VII forbids employers to discharge an employee because of such individual's religion."  Naylor v. County of Muscatine, 151 F.4th 973, 975 (8th Cir. 2025) (per curiam) (citation modified).  "The word 'religion' is defined to include all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to a religious observance or practice without undue hardship on the conduct of the employer's business."  Id. (citation modified).  "The elements of a prima facie case of wrongful

11

termination based on disparate treatment are: (1) membership in a protected group; (2) qualification for a position; (3) termination; and (4) circumstances that raise an inference of wrongful discrimination." Winbush v. Iowa by Glenwood State Hosp., 66 F.3d 1471, 1482 (8th Cir. 1995) (citing Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994)).

Novak stipulates to the first three elements but argues Taylor "has failed to adequately plead facts that give rise to an inference of discrimination." Doc. 11 at 11. The Court agrees. Nothing in Taylor's Complaint ties her discharge to religious discrimination. Taylor fails to state a claim for Title VII disparate treatment wrongful termination.

### 3.    Hostile Work Environment

"An employer violates Title VII if the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Eliserio v. USW, Local 310, 398 F.3d 1071, 1076 (8th Cir. 2005) (citation modified). "The claimant must show both that the offending conduct created an objectively hostile work environment and that [she] subjectively perceived the work environment to be hostile." Id. (citing Bowen v. Mo. Dep't of Soc. Servs., 311 F.3d 878, 883 (8th Cir. 2002)). "Whether an environment was objectively hostile or abusive must be judged by looking at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." Id. (citing Bowen, 311 F.3d at 884).

> To establish a prima facie case for hostile work environment under Title VII, a plaintiff must show: (1) [she] belongs to a protected group; (2) [she] was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege

12

of employment; and (5) [her] employer knew or should have known of the harassment and failed to take proper action.

Clobes v. 3M Co., 106 F.4th 803, 807 (8th Cir. 2024) (citation modified).

Novak argues that the most Taylor alleges in her Complaint is "that some non-managerial employees were reticent to talk to her after she repeatedly 'snitched on' them." Doc. 11 at 9. While Taylor might have subjectively perceived such silence as hostile, see Doc. 13 at 5–6, mere "snubbing by supervisors and co-workers" is not the type of harm Title VII seeks to subvert. BNSF Ry. v. White, 548 U.S. 53, 68 (2006) (citation modified); Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 969 (8th Cir. 1999) (citations omitted). More to the point, Taylor fails to draw a causal nexus between the silence, or any act she alleges in her Complaint, to her religion. To recap, Taylor references "an inappropriate banner with the F word and middle fingers up" but does not allege the banner was directed at her or her religion. Doc. 1 at 3. Taylor cites to a dangerous grease spot on the floor but does not explain how that was directed at her or related to her religion. Id. at 3–4. Taylor states management ignored the grease spot despite her making them aware of it but does not state that this failure to act related to her religion. Id. Taylor states that it was after her complaints about the grease that one half of her boot allowance was taken away, not because of her religion. Id. at 3. Taylor states that after she complained about co-workers vaping, she lost her driving job. Id. at 4. She does not claim this was due to her religion. And after "snitching on" her co-workers for vaping, her co-workers stopping talking to her. Id. at 4–5. Taylor alleges she was informed that at least some of her co-workers were told not to talk to her. Id. at 5. But she does not say they were told not to talk to her because of her religion. Id. And when a manager told her that a co-worker was mistaken about being instructed not to talk to her, Taylor accused the manager of lying and was resultingly sent home. Id. at 5–6. Nowhere does Taylor allege she was sent home because of her religion, only that she invoked the name of

13

God while commanding her manager to tell the truth. Id. Ultimately, Taylor was fired for her disrespectful manner during this meeting. Id. at 6.

Taylor states she "believes the . . . hostile work [environment] [was] brought on after she started putting pictures of Jesus and bible verses on the wall in her office, wearing biblical clothing and listening to Christian music in her office." Id. But that subjective belief is not enough for her claim to survive. Objectively, nowhere in Taylor's Complaint does she include any facts that could be construed as demonstrating Novak's discriminatory animus based on religion. Taylor fails to state a claim for a Title VII hostile work environment.

### 4.    Retaliation

Novak does not argue that Taylor failed to state a claim of retaliation for participating in a protected activity. See generally Doc. 11. As such, that claim is disposed of only on the failure to exhaust grounds stated in Section III(A)(2), supra.

## IV.    Order

For the above reasons, and the record as it now exists before the Court, it is hereby

ORDERED that Defendant's Motion to Dismiss, Doc. 10, is granted. Taylor's Complaint is dismissed without prejudice.

DATED this 15th day of July 2026.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

14